## Appeal of The Bank of Commerce.

*Mortgage as collateral Security for present and future Discount.—Validity of, as against subsequent Lien-Creditors.—Renewals of former Notes, not a Question of Intention, but of Fact for the Jury.*

1. A bank to which a mortgage was given "as collateral security for notes discounted or hereafter to be discounted," cannot, as against a lien-creditor whose judgment was subsequently entered up, claim the proceeds of the sale of the mortgaged property, where the notes on which claim was made under the mortgage were not given or discounted until after the entry of the judgment.

2. Where it was claimed that the notes were renewals of former notes, and those again of others, in a continuous series, all for the same debt, back to a period prior to the entry of the judgment, and on an issue to ascertain that fact, the court instructed the jury that if they found it, the bank was entitled to recover, leaving the question of renewals to them as a matter of fact; such instruction was not error.

3. Evidence of the intention of the parties at the time of the discounts, to consider the new notes as renewals of former notes preceding them in the series, is not admissible; for the question was one of fact, whether or not they were renewals, and not what the parties intended or considered.

APPEAL from the District Court of *Philadelphia.*

This was an appeal by the Bank of Commerce, from the decree of the court below, dismissing exceptions, filed for the appellants, to the report of the auditor appointed by the court, to distribute the proceeds of the sheriff's sale of the real estate of Robert Comly and William H. Maurice, as also a writ of error by the bank to the judgment of the District Court upon a verdict rendered in favour cf the defendant, in an issue awarded in the matter of said distribution, wherein The Bank of Commerce was plaintiff, and Edwin Forrest defendant.

The fund in court was the balance (after paying the judgment under which the premises were sold and the expenses of sale) raised by a sheriff's sale of certain real estate, situate on the

south side of Poplar street, between Fifteenth and Sixteenth streets, in the city of Philadelphia, under a *levari facias*, issued upon a judgment obtained upon a purchase-money mortgage made by the defendant and a former owner of the property, Robert Comly, to the Franklin Fire Insurance Company, and by it assigned to Edwin Forrest.

Subsequent to the making of this mortgage, the premises had been conveyed, on the 5th of April, A. D. 1850, subject to the same, to William H. Maurice, as whose property it was sold, under the above proceedings, on the 7th of January 1861. On the 9th of March 1855, Maurice mortgaged the premises to A. E. Borie, Esq., to secure the payment of the sum of $4000, as therein expressed, in one year from the date thereof. This mortgage was recorded on the 12th day of March 1855. It was claimed that this mortgage belonged in fact to the Bank of Commerce, of which Mr. Borie was president, and that, at the time of the sheriff's sale, the sum of $3213.25 was due thereon, and that the same was the first lien upon the fund in court. The whole of the fund was also claimed under a judgment entered against William H. Maurice, in favour of Edwin Forrest, in the District Court, on the 24th day of April 1856, for the penal sum of $20,000, by virtue of a warrant of attorney accompanying the bond. This bond was given to secure the payment of the sum of $10,000, and was executed on the 22d of October 1853, about two years and a half prior to judgment being entered upon it.

The facts material to a proper understanding and determination of the points involved were thus found by the auditor, John F. Brinton, Esq. :—

In 1853, William H. Maurice borrowed from Edwin Forrest the sum of $10,000, to secure which he gave the bond alluded to. This, with the accompanying warrant of attorney, were retained by Mr. Forrest in his possession, and no judgment entered thereon until April 24th 1856. On the 9th of March 1855, Mr. Maurice mortgaged the premises to A. E. Borie, Esq., who at the same time, gave to Mr. Maurice a declaration as to the purpose for which the mortgage was given, of which the following is a copy :—

"To all to whom these presents shall come : I, A. E. Borie, of the city of Philadelphia, merchant, send greeting. Whereas, William H. Maurice, of the said city, stationer, hath this day executed to me his bond and mortgage, conditioned for the payment of the sum of $4000 in one year from the date thereof : Now, know ye that I, the said A. E. Borie, do, by these presents, confess, acknowledge, and declare that the said bond and mortgage were executed by the said William H. Maurice, only as collateral security for the payment of notes discounted, or hereafter to be discounted, by the Bank of Commerce for the use of

[Appeal of the Bank of Commerce.]

the said William H. Maurice, and to and for no other use, intent, and purpose whatever; that I do not, on account of myself or my heirs, claim or demand any right, title, or interest in or to the said bond or mortgage, but do hereby confess, acknowledge, and declare that the said bond and mortgage were made to and received by me only as a trustee to the use of and for and on behalf of the said Bank of Commerce, of which I am the president; and that I, the said A. E. Borie, my executors and administrators, shall and will satisfy and cancel the said bond and indenture of mortgage, when the board of directors of the said bank shall request me so to do. In witness whereof, I, the said A. E. Borie, have hereunto set my hand and seal, this 9th day of March, A. D. 1855.

　　　　　　　(Signed)　　　　　"A. E. BORIE.　[SEAL.]
　Sealed and delivered in the presence of
　　"JAMES C. DONNELL,
　　"WILLIAM S. ADAIR."

The evidence before the auditor showed that all the notes held by the Bank of Commerce, on which Mr. Maurice is responsible, were dated subsequently to the entry of Mr. Forrest's judgment against him. Mr. Maurice was examined at great length, and, from his testimony, it appeared that he owed the bank rather more at the time of the entry of the judgment of Mr. Forrest, than at present; that he was in the habit of paying the notes that had been discounted for him as they became due, and getting other notes of about the same amounts discounted by the bank at or about the same time to meet these payments. Sometimes he would get a note discounted a few days prior to the maturity of the one falling due, and at other times, when he had sufficient money in bank to meet the maturing note, he would not get a discount until some days afterward, keeping, however, in the aggregate, his line of discounts very nearly the same. The notes produced by Mr. Maurice showed, during several years, a remarkable regularity and uniformity, the date of each succeeding note approximating very closely in time to the maturity of the prior one, and generally for the same amount. Mr. Maurice said distinctly that he regarded this long series of notes merely as a regular chain of renewals of those originally discounted for him. He, however, stated, with equal distinctness, that all the notes referred to, over one hundred in number, dating from those held by the bank at the time of the entry of Mr. Forrest's judgment to those now held by the bank inclusive, had been offered by him for discount at the bank on the regular discount days; had been, in the usual manner, discounted for him by the bank, and the proceeds passed to his credit in his bank account; and that the reason he regarded them as renewals was that he considered

himself always entitled to a certain amount or line of discounts in the bank, from having given the mortgage of $4000 to protect any discounts made or to be made for him.

The counsel for the bank (Mr. *Perkins*) maintained that the notes now held by the bank were in fact but the last of a series of renewals of notes originally discounted by the bank for Mr. Maurice prior to the entry of Mr. Forrest's judgment, and that they were merely the evidences of the same debt that existed then.

The counsel for Mr. Forrest (Mr. *Dougherty*), on the other hand, contended that the evidence showed conclusively that the notes now held by the bank, on which Mr. Maurice is responsible, were discounted in the regular way by the bank for him; that they were, in no proper acceptation of the term, renewals of prior notes; and that, even if they were such renewals, not being provided for in the declaration given by Mr. Borie, they were not protected by the mortgage held by him in trust for the bank, so as to enable him to claim for it priority in payment over a judgment entered before such renewals.

The auditor was of the opinion :—

1. That the notes held by the Bank of Commerce were discounted by it for Mr. Maurice subsequently to the entry of Mr. Forrest's judgment, and that therefore that judgment had a priority over the mortgage under which the bank claimed the fund in court given, to secure such discounts, there being no obligation on the part of the bank to make such discounts; and

2. That even if the notes held by the bank were regarded as the last of a series of renewals of notes discounted by the bank prior to the entry of Mr. Forrest's judgment, still, as such renewals were made, if at all, long subsequent to the entry of said judgment, and as it was expressly agreed, at the time of its execution, that the mortgage under which the bank claims was given for no other purpose, use, or intent than as collateral security for the payment of notes discounted or to be discounted by the bank for the use of the said William H. Maurice, the judgment of Mr. Forrest was entitled to be first paid out of the fund in court.

He therefore awarded the fund in court, $3425.45 less expenses, to Edwin Forrest, on account of the judgment of Forrest *v.* Maurice.

To this report, exceptions were filed for the bank, which, on argument, were dismissed by the District Court for the following reasons :—

"We dismiss these exceptions, and confirm the report of the auditor absolutely. We entirely concur in his reasoning and conclusions, and it is unnecessary to add anything.

"The mortgage, as against Mr. Forrest, was only a security for

the notes held by the bank when his judgment was entered.   It
did not in terms include renewals.   If the notes now held were,
in bank language, renewals, we cannot see how they could be in
the security, supposing that, under the decision, it became fixed
at the date of Mr. Forrest's judgment.   By the very term re-
newal, in banking and legal language, is meant not another
security for an old debt, but a *novation* or *renovation* from time
to time, a direct payment and discharge of the old debt, and an
entirely new contract and advance.   It may possibly be different
in some cases as to the parties, maker and payee, but so far as
the bank is concerned, in fact and in law, the old notes are sur-
rendered and cancelled, new notes taken, and a new discount in
advance charged and deducted from the face of the bill, thus
enabling the bank, on a note at sixty days, to receive four-tenths
of 1 per cent. more than legal interest, besides compounding it
as they go along.   The bank has never any claim except upon
the notes.   They do not loan the money and take the notes as
collateral; they buy the notes from those who offer them for dis-
count.   It was not from any doubt on this point that the issue
was directed, but because we felt some difficulty as to whether
this was a question of fact, the exceptant having demanded an
issue upon it, namely, whether the subsequent notes were merely
different securities for one and the same debt; not what was the
intention of the parties, which might be very well on a question
as between themselves, but the rights of a third party having
intervened, what were the facts ?   The verdict of the jury on the
issue was what was to be anticipated.   The notes now held could
not even be shown to be the lawful issue of those originally dis-
counted.   Every one of them was illegitimated by breaks in the
descent.   Besides which, the fact as to the manner in which all
banks invariably conducted this business, came out fully and
without contradiction on the trial, so that, even had it been
shown, which it was not, that the proceeds of the discount of
every note had been specifically applied to pay its predecessor,
no jury would say, with any show of truth, that they were mere
new securities for an old debt."   The substance of the charge to
the jury on the trial is stated in the opinion of this court.   This
appeal was then taken and the writ of error sued out.

The errors complained of here were the dismissing of the ex-
ceptions filed for the bank, and the refusal of the court on the
trial to permit the counsel for the bank to propound the following
questions to Mr. Maurice, when on the stand as a witness :—

" Is or is not that note a renewal of any note or notes for-
merly held by the Bank of Commerce, and if so, of what note
or notes ?

" Were or were not the notes now held by the plaintiffs in-
tended as renewals of the notes held by the bank prior to April
24th 1856 ?"

[Appeal of the Bank of Commerce.]'

The refusal of the court to allow the counsel for the bank to propound the following questions to the witness, A. E. Borie, while on the stand:—

" What was the intention of the bank and Mr. Maurice in relation to the series of notes; was it or was it not their intention that they were to be considered as renewals? '

" Were any of the notes prior to April 24th 1856, discounted by the bank for Maurice, ever renewed?"

And in refusing to instruct the jury as requested in plaintiff's first and second points, which were as follows :—

" That if the jury believe from the evidence, that it was the intention of the parties, that the several series of notes mentioned in the printed schedules should be considered as renewals, the verdict must be for the plaintiffs.

" That whether the notes in question were the last of a respective series of renewals, depends upon the intention of the parties as to the successive notes which make up the respective series. And, if the jury believe from the evidence, that it was the intention of the parties that these successive notes should be renewals of the preceding notes in the respective series, the verdict must be for the plaintiffs."

*Samuel C. Perkins* and *Samuel H. Perkins*, for appellants and plaintiffs in error.

*Daniel Dougherty* and *R. C. McMurtrie*, for appellee and defendant in error.

The opinion of the court was delivered, March 16th 1863, by

READ, J.—The mortgage, which forms the foundation of the appellant's claim, was dated March 9th 1855, recorded on the 12th of the same month, and was for $4000, payable one year from date; was executed by William H. Maurice to A. E. Borie, and was accompanied by a bond and warrant, upon which judgment was entered on the 30th July 1860. These papers did not represent the real transaction; for, it appears that Mr. Borie, who was the president of the bank, took it for the benefit and protection of that institution, under a special contract with Mr. Maurice, all the terms of which are stated in a deed-poll executed by Mr. Borie, and bearing even date with the mortgage. This deed or paper recites, " Whereas, William H. Maurice, of the said city, stationer, hath this day executed to me his bond and mortgage conditioned for the payment of the sum of $4000, in one year from the date thereof; now know ye that I, the said A. E. Borie, do by these presents confess, acknowledge, and declare that the said bond and mortgage were executed by the said William H. Maurice, only as a collateral security for the payment of notes discounted, or hereafter to be discounted, for

the use of the said William H. Maurice, and to and for no other use, intent, or purpose whatsoever; that I do not, on account of myself or my heirs, claim or demand any right, title, or interest in or to the said bond or mortgage, but do hereby confess, acknowledge, and declare, that the said bond and mortgage were made to and received by me only as a trustee, to the use of and for and on behalf of the said Bank of Commerce, of which I am the president."

This paper was not recorded, but it was clearly proved that it contained the whole contract between the bank and the mortgagor. It is not a contract for renewals, as in Gault v. McGrath, 8 Casey 392, but resembles that of the Bank of Montgomery County, in that Bank's Appeal, 12 Id. 170, and is entirely unlike the mortgage of B. W. Richards, in the same case, where there was an absolute contract on the part of the person, secured by the mortgage, to make sales to the mortgagors, and to furnish endorsements of notes, given by the mortgagors for purchases from other persons.

The agreement, by its positive terms, clearly included all notes of every description, discounted for the use of the mortgagors, covering, of course, the two notes, which the bank did not claim as against Mr. Forrest, as well as the eight notes which were claimed as renewals of eight notes held by the bank, at the date of the entry of his judgment.

The controversy in the present case arose upon the distribution of the proceeds of a sheriff's sale, of the mortgaged premises, under a judgment entered up in the District Court on the 24th of April 1856, upon a bond and warrant for $10,000, given and executed by William H. Maurice in favour of Edwin Forrest, dated October 22d 1853, payable in one year from date, and the consideration was money loaned. It was referred to an auditor, who reported that the eight notes held by the bank were not renewals of the notes originally discounted by the bank, or of those held by it, at the time of the entry of Mr. Forrest's judgment. The bank and Mr. Forrest each filed with the auditor a demand for an issue substantially upon the same question, "whether the notes held by the bank at the time of the sale were renewals of notes held by them at the time of the entry of Forrest's judgment, and if so, to what amount?" Upon the filing of the auditor's report exceptions were filed by the bank, and the court granted their demand for an issue. The pleadings were in the usual form upon a wager, the bank being plaintiffs and Mr. Forrest defendant.

Upon the trial of this feigned issue several questions were propounded to Mr. Maurice and Mr. Borie by the plaintiffs, which were objected to by the defendant, and overruled by the court, on the ground that they were asking the opinions of the witnesses,

when it was the proper course to state the facts. As these questions were substantially submitted to the court, in the first and second points of the plaintiffs, upon which the judge was requested to charge the jury, it will be more convenient to consider the admissibility of such evidence in reviewing the answers and the charge of the court.

The court in their charge said, "This is the simple question, whether these notes, or any of them, are renewals? It is a question of fact. I understand a renewal to be a new security given for a debt due, or falling due, in fact substituting one security for another whether it is the same debt." "If the securities now held are notes or securities given for the same debt, they are renewals." Now, this seems to be a correct and comprehensive view of the law, and it is nowhere complained of by the appellants, and the court were clearly right in saying renewal or not was a question of fact, for only in that light could a jury be required to pass upon it. The court affirmed the third, fourth, and fifth points of the plaintiffs, as follows: "That it is not necessary, in order to one note being a renewal of a former one, that it should be of the same amount, or time to run, or made or endorsed by the same parties; nor that the note given in renewal should be given, or bear date upon the day of the maturity of the former note; and that it need not appear that the identical proceeds of the new note were actually applied to take up the note for which it was a renewal. That a new note may be a renewal of a former one, although the new note passes through the regular course of discount in a bank; in other words, that because a note is discounted, it does not necessarily follow that it is not a renewal of a former note; and that if the jury believe that the several series of notes testified to by William H. Maurice, formed one continuous transaction in the loan of money by the bank to Maurice, of which loan the notes in question are the evidence, the verdict must be for the plaintiffs, notwithstanding any new note, in any one or more of the series, may have been discounted prior or subsequent to the maturity of the preceding note"—the court adding, "you are to determine whether the notes now held are securities for the same debt."

Now, these instructions are certainly as liberal as the plaintiffs could desire, and unless the debt for which these notes were given existed at the time of the Forrest judgment, it is clear that the mortgagee could not claim to be paid out of the proceeds of the sheriff's sale in preference to that encumbrance.

The first and second points of the plaintiffs were requests that the court should charge the jury that, if it was the intention of the parties that these several series of notes should be considered as renewals, and that whether the notes in question were the last of respective series of renewals, depends upon the intention of

the parties as to the successive notes which make up the respective series; and if the jury believe, from the evidence, that it was the intention of the parties that those successive notes should be renewals of the preceding notes in the respective series, the verdict must be for the plaintiffs. This the court properly refused to do, saying, "I do not think it is a question what the parties intended or considered. But what is the fact? Was it for the same debt?"

It will be recollected that there was not a word, either in the written or any other contract, between the bank and Mr. Maurice about renewals at all, and that the rejected questions on the trial and these points were attempts to substitute the opinions and the intentions of the parties for the actual facts; and the court were therefore clearly right in overruling the questions, and in declining so to charge the jury.

The jury gave a verdict for the defendant, the court refused a new trial, dismissed the exceptions, and confirmed the auditor's report absolutely. We have, therefore, the report of an auditor, the finding of a jury, and the deliberate judgment of the court below, that these notes were not renewals, nor given for the debts due, or falling due at the time of the entry of the Forrest judgment; and, upon a careful examination of the whole case, we see no good reason to dissent from this decision.

Decree affirmed, at the costs of the appellants.

BANK OF COMMERCE *v.* EDWIN FORREST.

ERROR to the District Court of *Philadelphia.*
The above opinion decides this case.

Judgment affirmed.