## McClure *versus* Roman.

1. Easton gave a due-bill to McClure to protect him, *inter alia*, in any future liabilities he might incur for Easton, and judgment was entered on it; two days after the entry McClure signed notes for Easton, and afterwards, *on the same day*, Roman entered a judgment against Easton. In distribution of Easton's estate, the notes and Roman's judgment were to be paid *pro rata*.

2. The liability incurred by McClure by the notes, could not be carried back further than their date: the notes and Roman's judgment were to be treated as judgments entered on the same day.

APPEAL by Alexander K. McClure from the decree of the Court of Common Pleas of *Franklin county*, confirming the report of the auditor appointed to distribute the balance in the hands of the assignees for the benefit of creditors of H. Easton.

Easton, on the 27th of May 1857, executed the following due-bill:—

"$60,600. Due John Anspach, Jr., William G. Reed, Wm. McLellan and Alexander K. McClure, the sum of Sixty Thousand Six Hundred Dollars, value received. And I hereby authorize and empower the prothonotary of Franklin county, Pennsylvania, to enter judgment against me for the said sum of Sixty Thousand Six Hundred Dollars, with costs of suit, release of error, &c.

"Witness my hand and seal, this 27th day of May, A. D. 1857.

"(Signed),　　　　　　"H. EASTON." [SEAL.]

A schedule of Easton's liabilities, amounting at the time to $60,600, was made; and also the following agreement, of the same date, signed by Easton, under seal:—

"I have given a judgment of even date herewith, in favour of John Anspach, Jr., William G. Reed, William McLellan and A. K. McClure, to be entered in the Common Pleas of Franklin county, Pennsylvania, in the sum of Sixty Thousand Six Hundred Dollars ($60,600) for the purpose of protecting the aforesaid

[McClure *v.* Roman.]

parties in the foregoing debts and liabilities, and also on any debts and liabilities they may have incurred for me not enumerated in the foregoing schedule, and also in any future debts and liabilities they may incur for my use ; the same being intended to protect them in all liabilities heretofore assumed, or hereafter to be assumed, either jointly, severally or as partners, for my use or benefit, whether the same be in the shape of debts due them, or either of them, acceptances, endorsements or drafts drawn and accepted for my benefit."

On the 15th of July 1857, Reed, one of the payees in the due-bill, received by letter from J. Philip Roman a judgment-note in his favour against Easton for $20,000, with peremptory orders to Reed to enter judgment on it, and on the same day Reed showed the letter to McLellan, another payee in the due-bill, and McClure's law partner. Judgment was entered on the due-bill to McClure and others July 18th 1857. On the 20th of July McClure became bound for Easton to John Rosenberg in four notes, amounting to $3800, in pursuance of a verbal agreement made some days before, that he would be surety for Easton for the purchase of an interest in a printing-office, McClure knowing of Roman's judgment-note : and afterwards, *on the same day*, judgment was entered on Roman's note. The fund in the assignee's hands for distribution was $8239.19, which was referred to C. S. Eyster, Esq., as auditor, for distribution. He reported that there was an undisputed balance of $2249.95 of the $60,600 judgment due ; after deducting which and the expenses, there remained $5919, which he distributed *pro ratâ* between McClure, on his claim under the four notes ($3800), and the Roman judgment.

The report of the auditor was confirmed by the court, overruling the following exceptions by McClure to the report :—

1. The auditor erred in not appropriating to the Rosenberg notes, endorsed by A. K. McClure, the full amount of that claim.

2. The auditor erred in *pro rating* the amount for distribution, to the claim on the Rosenberg notes and the Roman judgment.

These were the errors assigned.

*Kimmell*, and *McClure & Stewart*, for appellants, cited Ter-Hoven *v.* Kerns, 4 Barr 96 ; Mann *v.* McDowell, 3 Id. 359.

*T. B. Kennedy* and *J. M. D. Sharpe*, for appellee, cited Lyle *v.* Ducomb, 5 Binn. 585 ; James *v.* Johnson, 5 Johns. Ch. 429 ; Irwin *v.* Tabb, 17 S. & R. 423 ; Garber *v.* Henry, 6 Watts 57 ; Brinkerhoof *v.* Marvin, 5 Johns. Ch. 175 ; Ter-Hoven *v.* Kerns, 2 Barr 96 ; Gault *v.* McGrath, 8 Casey 392 ; Shenk's Appeal, 9 Id. 371 ; Bank of Montgomery County's Appeal, 12 Id. 170 ; Johnson's Appeal, 1 Wright 268 ; Metzler *v.* Kilgore, 3 Penna. R. 245 ; Ulrich *v.* Dreyer, 2 Watts 303 ; Mechanics' Bank *v.*

Gorman, 8 W. & S. 307; Claason's Appeal, 10 Harris 359; Hendrickson's Appeal, 12 Id. 363.

The opinion of the court was delivered, June 20th 1866, by

READ, J.—Since the decision of The Bank of Montgomery County's Appeal, 12 Casey 170, the case of Hopkinson *v.* Rolt, cited in it, has been decided in the House of Lords (9 H. L. C. 514), affirming the decisions of the Lord Chancellor and of the Master of the Rolls. The question in this case is, what is the effect of the decision in 12 Casey, upon the acknowledged and undisputed facts before us ? Hezekiah Easton executed a judgment-note, on the 27th May 1857, to John Anspach, Jr., W. G. Reed, W. McLellan and A. K. McClure, for $60,600, on which judgment was entered of record on the 18th of July 1857.

This note was accompanied by a schedule of liabilities, as they existed at the date of its execution, and also an agreement signed by Mr. Easton, which schedule and agreement were not filed with the judgment when it was entered. This agreement stated the judgment to have been given, *inter alia,* for the purpose of protecting said parties (plaintiff) " in any future debts and liabilities they may incur for my use; the same being intended to protect them in all liabilities heretofore assumed or hereafter to be assumed, either jointly, severally or as partners, for my use or benefit, whether the same be in shape of debts due them, or either of them, acceptances, endorsements or drafts drawn and accepted."

It is clear, therefore, that any future liabilities incurred by either of the obligees would not be by any contract under which they were obliged to incur them, but would be of an entirely voluntary character, and would be included in the following extract from 12 Casey : " Its object was, therefore, to secure not only present but future advances by the Bank of Montgomery County, which future advances they were under no contract to make, but which it was at their own option to make or not as they thought proper."

For the reasons assigned by the auditor, we do not think the liabilities incurred by the appellant can be carried further back than the 20th of July 1857, the date of the four notes given by the appellant.

On the 29th of April 1857, Hezekiah Easton confessed a judgment in favour of J. Philip Roman, for $20,000, which was entered of record on the said 20th of July 1857. On the 15th of July, William G. Reed, one of the plaintiffs in the judgment for $60,600, received a letter from J. Philip Roman, with the judgment-note, and a peremptory order to have the same judgment-note entered of record. against said Hezekiah Easton, and that on the same day Mr. Reed showed the letter and judgment-

[McClure *v.* Roman.]

note to William McLellan, another of the plaintiffs. That the appellant, also one of the plaintiffs, knew of the existence of the Roman judgment-note on the day before he signed the notes of Easton to Rosenberg, for the security of the purchase-money of the printing establishment. If Mr. Reed had obeyed his instructions the Roman judgment would have been entered three days before the Anspach judgment. The letter was received by Mr. Reed on Wednesday, and the Anspach judgment, in which he was one of the plaintiffs, was entered on Saturday, and he never entered the Roman judgment until the Monday following, a very grave disobedience of the peremptory order of Mr. Roman.

The four notes were signed on the same day with the entry of the Roman judgment, but before it was actually entered of record. If these notes had been judgment-notes, and entered on the same day, or if judgment for their amount had been confessed and judgment entered on that day, but before the entry of the Roman judgment, there can be no doubt but that no priority could have been claimed, for in such cases there are no fractions of a day: Metzler *v.* Kilgore, 3 Penna. R. 245 ; Claason's Appeal, 10 Harris 363. We cannot perceive that there is any substantial difference between the present case and those just put. The lien of the notes, under the judgment of the 18th, cannot commence earlier than the 20th, and if so, as between judgments, there are no fractions of a day, the auditor and the court were right in holding that the judgments as such must be paid *pro ratâ*.

To the authorities cited by the auditor on the 16th page of the plaintiff's paper-book may be added Schick *v.* Pharo, 13 Wright 384.

We have not extended our remarks, for the auditor's report is very full and satisfactory.

Decree affirmed.

AGNEW, J., dissented.