Wardman v. Iseman et al. Appeal of Muntz-Wright Co.

Argued April 22, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*W. Walter Braham* of *Aiken and Braham,* and with him *Robert M. Gilkey* of *Templeton, Whiteman, Rowley and Gilkey,* for appellant.—There existed a valid contract to make future advances: Baker v. Bailey, 204 Pa. 524.

Where there is an obligation to make future advances, the mortgagee is protected as against subsequent encumbrances: Moroney's Appeal, 24 Pa. 372; Land Title and Trust Co. v. Shoemaker, 257 Pa. 213; Dahlem's Estate, Yost's Appeal, 175 Pa. 444.

*Roy M. Jamison* of *Matthews and Jamison,* and with him *M. J. Kraus,* for appellee, cited: Rhodes v. Reed, 89 Pa. 436; Ter-Hoven v. Kerns, 2 Pa. 96; Bank of

Montgomery County's Appeal, 36 Pa. 170; Hawley v. Griffith, 187 Pa. 306.

OPINION BY TREXLER, P. J., July 10, 1930:

The matter arose in the distribution of money arising from the sheriff's sale of real estate. The Muntz-Wright Company of Greenville, Pennsylvania, had for some time been supplying the Ellwood City Harness Company with merchandise. On the 29th of May, 1925, F. L. Iseman and Grace E. Iseman, who operated as the Ellwood City Harness Company, gave the Muntz-Wright Company a bond for $2,000, conditioned that they would pay or caused to be paid all existing and future indebtedness of F. L. Iseman and Grace E. Iseman to the Muntz-Wright Company. The bond and mortgage contained no due date and was recorded.

On February 15, 1926, the Peoples National Bank of Ellwood City entered judgment against the Isemans for the sum of $3,600. On this date the Isemans owed $2,557.85 to the hardware company. Prior to the time this judgment was entered and practically down to the sale, the Muntz-Wright Company continued to furnish merchandise to the Isemans. The Isemans would give notes for most of the merchandise which they purchased. These notes were discounted by the Muntz-Wright Company at its bank and when due would be forwarded to the Peoples National Bank for payment. The Muntz-Wright Company would forward its check to the Isemans who would take up the note and give a renewal note. It seems that enough money had been paid by Isemans to pay the indebtedness existing as of February 15, 1926, the date when the judgment note of the bank was entered. The appellant denies this, affirming that the notes given from time to time did not extinguish the debt. On March 26, 1928, execution was issued upon the bond to John Wardman, above referred to.

At the time of the sheriff's sale the indebtedness of the Isemans to the Muntz-Wright Company was in excess of the amount of the money for distribution. The contest is between the Muntz-Wright Company and the Peoples National Bank of Ellwood City, each claiming the funds in the hands of the sheriff. An auditor was appointed who awarded the net amount to the Muntz-Wright Company. The lower court reversed and gave it to the bank.

The auditor correctly stated the principle of law involved, that where a mortgage to secure future advancements is given and does not bind the mortgagee to make subsequent advancements, such advancements, if made, are purely voluntary and relate in lien only to the actual date of the advancement instead of the date of the mortgage, and are subject to all intervening encumbrances: Moats v. Thompson, 283 Pa. 313; Ter-Hoven v. Kerns, 2 Pa. 96; Bank of Montgomery's Appeal, 36 Pa. 170; Taylor v. Cornelius, 60 Pa. 187. The auditor found that in the case before us, the mortgagee was definitely required by his engagement at the time the mortgage was given to allow a credit of $2,000 to the mortgagor. There was evidence in the case to support this finding. The following is the testimony of C. H. Muntz: "Q. What was the mortgage given for? A. Their account and for any further stuff we would give them up to the limit of $2,000 which he and I agreed on. Q. Did I understand you to say that you had agreed with Mr. Iseman that you would furnish him goods to the amount of $2,000? A. We had an agreement to that effect." "Q. State the circumstances and conditions under which this bond and mortgage came to be executed. A. Well, I was settling with Iseman for his accounts. We had a number of notes against them, you know, to the amount of whatever the amount was, and it was getting too large and he wanted more goods and I

told him the way we done, the way we had always been doing; he had to have a standing credit at our house for so much, and to secure any money we would take and make out a note for an amount; so after talking it over he made a mortgage for $2,000; he was to have a standing credit at our place to the amount of $2,000 a continuous credit, just like we have done repeatedly with other customers.''

This language supported the conclusion the auditor reached. Under this agreement the Isemans had a right to purchase goods in the future to the amount of $2,000 and this could not be denied them by the Muntz-Wright Company.

The lower court did not deem this testimony sufficient to support the conclusion reached by the auditor, but we all think that his conclusion is sustained by the language employed. We need hardly add that the auditor's finding founded upon sufficient evidence should be approved.

The court raised the objection that in the bond and mortgage filed, there is no time for payment stated and that amounts to a condition for immediate payment. This may be true where the whole transaction involved merely looks to a payment of the just sum mentioned in the bond, but it is not so where a mortgage is made to secure future advances and no time of payment is mentioned. The course to be pursued to terminate the engagement between the parties in such case is indicated in Baker v. Bailey, 204 Pa. 524, which suggests that a bill in equity calling for the mortgagor to redeem, is the proper practise. To hold that the amount of the bond was presently payable would be entirely inconsistent with the whole purpose of the transaction which was to secure future advances.

Upon the face of the mortgage there was a debt due of $2,000 and had there been no oral testimony,

that sum realized by the sheriff would go to the Muntz-Wright Company out of the funds in hand. To overcome the provisions of the mortgage which on its face called for the payment of a fixed sum, it was competent to prove by oral or written testimony that its real purpose was to secure future advances and to show what the actual contract of the parties was. This has been done in numerous cases: Moroney's Appeal, 24 Pa. 372; Land Title & Trust Co. v. Shoemaker, 257 Pa. 213. There was no error in receiving the testimony offered to show what the agreement of the parties actually was.

The assignments of error are sustained, the judgment reversed and the record remitted that distribution may be made in accordance with this opinion.