**In re Curtis JOHNSON, Debtor.**

**PROVIDENT NATIONAL BANK, Plaintiff,**

**v.**

**FIRST PENNSYLVANIA BANK, N.A., Defendant.**

**Bankruptcy No. 90–11008S.
Adv. No. 90–0769S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

March 11, 1991.

Margaret Gairo, Philadelphia, Pa., for Provident Nat. Bank.

Leo Francis Doyle, Havertown, Pa., John Gehring, Becket & Watkins, Malvern, Pa., for First Pennsylvania Bank, N.A.

Edward Sparkman, Philadelphia, Pa., standing chapter 13 trustee.

Jane MacElhenney, Philadelphia, Pa., for debtor.

feasibility or that it's not in the best interest of     the creditors.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The instant proceeding, involving an issue of the relative priorities of (a) a mortgage securing future advances and (b) a mortgage intervening prior to the advances, presents a question addressed but not definitively resolved under controlling Pennsylvania law. Believing that Pennsylvania no longer clings to a minority position that the recording of the intervening mortgage is sufficient notice to the mortgagee making subsequent future advances to subordinate this otherwise prior mortgage, we conclude that the mortgagee making advances is entitled to priority over the intervening mortgage, subsequent to the entry of the intervening mortgage even if such advances were not obligatory on its part.

### B. PROCEDURAL AND FACTUAL HISTORY

The instant dispute arose in the context of an individual Chapter 13 bankruptcy case filed on March 6, 1990, by CURTIS W. JOHNSON, II ("the Debtor"). The Debtor, whose Plan of Reorganization was confirmed on November 27, 1990, is not a party to this dispute. *But see* page 650 n. 1 *infra.*

■ The instant proceeding was commenced by a Complaint filed on October 4, 1990, by PROVIDENT NATIONAL BANK ("Provident") against FIRST PENNSYLVANIA BANK, N.A. ("1st PA."), seeking a declaration as to the validity and priority of the parties' respective mortgages against the Debtor's residential real estate located at 1422 East Duval St., Philadelphia, PA 19138 ("the Premises"). Provident's allegation that this proceeding is core was admitted by 1st PA. in its Answer. These averments constitute a consent on the part of both parties that we can determine this proceeding even if it is non-core. *See* 28 U.S.C. § 157(c)(2); *In re Shapiro, Official Committee of Unsecured Creditors v. Cushman & Wakefield of PA., Inc.,* 124 B.R. 974, 978–79 (Bankr.E.D.Pa.1991); and *In re St. Mary Hospital,* 117 B.R. 125, 131 (Bankr.E.D.Pa.1990). Therefore, we will proceed to determine this proceeding.

After a continuance from the original trial date of November 15, 1990, to January 17, 1991, the parties came before us on the latter date and expressed an agreement, embodied in our Order of January 18, 1991, that the record would consist of a Stipulation of Facts to be filed by January 25, 1991, and Briefs would be filed by the parties by February 15, 1991 (Provident), and March 1, 1991 (1st PA.). A good opportunity to resolve the matter amicably was lost when 1st PA.'s counsel, for reasons which we deem excusable neglect, failed to appear for a settlement conference before the Honorable Judith H. Wizmur of the District of New Jersey on February 20, 1991.

This Opinion is delivered in narrative form because this proceeding was presented on a Stipulation of Facts and we are not obliged to make any findings of fact. The Stipulation of Facts contains the facts recited hereinafter.

On January 21, 1986, 1st PA. granted a personal line of credit in the amount of $17,000.00 to the Debtor. From January, 1986, to July, 1988, the Debtor obtained cash advances from 1st PA. on this line of credit.

On or about July 12, 1988, the Debtor submitted an application to Provident for a bill-consolidation loan, listing 1st PA. as one of his creditors to be paid off thereby, and noting a balance of $16,000.00 on this obligation. On August 8, 1988, the Debtor obtained the requested loan from Provident in the amount of $30,000.00. On that same date, Provident obtained a mortgage on the Premises, as security for the loan, which was duly recorded. In distributing the loan proceeds, Provident disbursed a check in the amount of $17,150.98 towards the Debtor's obligation to 1st PA. No other communications between the parties are alleged.

The payment from Provident liquidated the entire balance of the Debtor's obligation to 1st PA. except a balance of $52.02, which the Debtor paid off in September, 1988.

However, in October, 1988, the Debtor began taking cash advances once again from 1st PA. under the line of credit established on January 21, 1986. 1st PA. filed a secured proof of claim in the Debtor's case in the amount of $18,796.55 plus interest as accrued, which presumably reflects the balance due on this credit line as of the Debtor's bankruptcy filing. Meanwhile, Provident filed a secured proof of claim in the Debtor's case for pre-petition mortgage arrearages of $4,673.50.

The parties incorporated certain portions of the Debtor's Chapter 13 Statement in their Stipulation of Facts, presumably also stipulating to the accuracy thereof. The Statement values the Premises at $30,000 and states that Fireman's Fund Mortgage Corp. ("FFMC") holds a first mortgage prior to both of the parties' mortgages on the premises in the amount of $17,000. One of the parties therefore appears to be undersecured and the other totally unsecured.[1]

## C. LEGAL DISCUSSION

The law pertinent to the instant matter is comprehensively surveyed in Annot., *Optional Advance Under Mortgage as Subject to Lien Intervening Between Giving of the Mortgage and Making the Advance*, 138 A.L.R. 566 (1942) ("the Annotation"). The "majority doctrines" recited in the Annotation relevant to disposition of the instant proceeding, *id.* at 568, 579, are as follows:

> In most jurisdictions of this country wherein the question has arisen, as well as in England, Ireland, and Canada, an advance made pursuant to a mortgage to secure future advances which the mortgagee was not obligated to make (and which, moreover, he was not entitled to make other than upon the request or approval of the mortgagor) is subordinate in lien to an encumbrance intervening between the giving of the mortgage and the making of the advance *if the advance was made with actual notice or knowledge of the intervening encumbrance.*

> \*   \*   \*   \*   \*   \*

> The rule laid down in most jurisdictions is that an advance, though purely optional, made pursuant to a mortgage of which subsequent parties had record, or other sufficient notice, is a lien or charge superior to an encumbrance intervening between the giving of the mortgage and the making of the advance *if the mortgagee had no knowledge and no actual notice of the intervening encumbrance.* It is to be observed that such rule, where actually applied, has usually been invoked to deny effect to mere record notice of the intervening encumbrance, without the sufficiency of any other form of constructive notice having been at issue (emphasis added).

*Accord,* 55 AM.JUR.2d 412 (1971); and 59 C.J.S. 325–26 (1925).

These authorities cite no Pennsylvania cases in support of the "majority doctrines." To the contrary, the Annotation cites a few Pennsylvania cases, *McClure v. Ramon,* 52 Pa. 458 (1866); *Appeal of Bank of Commerce,* 44 Pa. 423 (1863); *Bank of Montgomery County's Appeal,* 36 Pa. 170 (1860); and *Ter–Hoven v. Kerns,* 2 Pa. 96 (1845), in support of the following "minority doctrine," 138 A.L.R. at 587:

> According to the doctrine of a few cases (most of them not recently decided) the lien of a so-called "optional" advance (that is, one which the mortgagee was

---

1. The Debtor may be contemplating the initiation of a proceeding under 11 U.S.C. § 506(a) against one or both of the parties pending the outcome of this proceeding. *See Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123, 128–29 (3rd Cir.1990); and *In re Lewis,* 875 F.2d 53, 57 (3d Cir.1989).

However, we also note that FFMC was granted relief from the stay as to the Premises on July 24, 1990, but that the Debtor's objection to FFMC's proof of claim was sustained on the grounds that the Debtor is paying the obligation outside of his Plan. It is therefore not totally clear what the Debtor's intentions as to the Premises are.

not obliged to make, and presumably one which he was not entitled to make other than upon the specific request or with the consent of the mortgagor), though made without actual notice of an encumbrance intervening between the giving of the mortgage and the making of the advance, is subordinate to such encumbrance, except, of course, as a failure to record the intervening encumbrance may have produced a contrary result.

Subsequent to the publication of the Annotation, the Pennsylvania Supreme Court revisited the issue in question in *Housing Mortgage Corp. v. Allied Constr., Inc.*, 374 Pa. 312, 321–22, 97 A.2d 802, 805–06 (1953), and stated as follows:

> The law is definitely established that an advance made pursuant to a mortgage to secure future advances which the mortgagee was not obligated to make, is subordinate in lien to an encumbrance intervening between the giving of the mortgage and the making of the advance, *if the advance was made with actual notice or knowledge of the intervening encumbrance;* the lien of an advance under such circumstances dates only from the time it was made and not from the time of the creation of the mortgage. In other words, after notice of the existence of a junior lien, the senior mortgagee will not be protected in making further advances under his mortgage unless he is under a binding obligation to make such advances. *Ter–Hoven v. Kerns*, 2 Pa. 96; *Bank of Montgomery County's Appeal*, 36 Pa. 170; *Taylor v. Cornelius*, 60 Pa. 187; *Moats v. Thompson*, 283 Pa. 313, 319, 320, 129 A. 105, 107; *Batten v. Jurist*, 306 Pa. 64, 73, 158 A. 557, 560, 81 A.L.R. 625; *Wardman v. Iseman*, 99 Pa.Super. 551, 554. It is only when the advance-money mortgagee is contractually obligated to make the advances that their lien relates aback to the date of the mortgage. *Moroney's Appeal*, 24 Pa. 372; *Taylor v. Cornelius*, 60 Pa. 187, 196; *Land Title & Trust Co. v. Shoemaker*, 257 Pa. 213, 219, 101 A. 335, 337 (emphasis added).

Both parties and several subsequent authorities, including a decision of this court, accurately consider this quotation as an authoritative statement of the law of Pennsylvania on this issue. *See, e.g., In re Cole*, 60 B.R. 325, 327–28 (Bankr.E.D.Pa. 1986) (GOLDHABER, CH. J.); *Central Pa. Saving Ass'n v. Carpenters of PA., Inc.*, 502 Pa. 17, 22, 463 A.2d 414, 417 (1983); and *Western PA. Nat'l Bank v. Peoples Union Bank & Trust Co.*, 439 Pa. 304, 309, 266 A.2d 773, 776 (1970) (POMEROY, J., conc. op.).

■ The issues which we think are decisive of this controversy are the following: (1) Was 1st PA. obligated to make further loans to the Debtor after September, 1988, pursuant to its loan agreement? If the answer to this question is affirmative, 1st PA. should prevail, even under the "minority doctrine;" and (2) Has Pennsylvania repudiated the "minority doctrine," in *Housing Mortgage* or elsewhere, that constructive notice by recording, as opposed to actual notice, is sufficient notice to the mortgagee making future advances subsequent to the intervening mortgage to provide the intervening mortgage with priority? If the answer to this question is affirmative, 1st PA. again would prevail, because the record indicates, and Provident appears to concede, that the only notice which 1st PA. had of Provident's intervening mortgage was by recording.

We think that the answer to the first question is negative. We agree with the following analysis of this issue which appears in the Annotation, 138 A.L.R. at 572:

> [T]he proper inquiry in such cases would seem to be not merely whether the mortgagee was obligated to make the further advances but also whether he was given the right to make them on the security of the premises, independently of the will of the mortgagor.

1st PA. argues that, since the Debtor retained a credit line of $17,000, even subsequent to its payoff in September, 1988, it was required to loan him up to $17,000. Clearly, however, 1st PA. was not obliged to make post-September, 1988, advances to the Debtor independently of the Debtor's will. 1st PA.'s making of the new ad-

vances was done strictly at the Debtor's option. Except perhaps for the construction-loan context in which this rule evolved, it is difficult to imagine a scenario in which the lender could actually impose a loan upon the mortgagor. Therefore, the "obligatory loan" exemption does not appear to be applicable here.

Recent Pennsylvania cases nevertheless appear inclined to find subsequent advances to be obligatory, without a great deal of analysis. *See, e.g., Cole, supra,* 60 B.R. at 327; *Central PA. Savings, supra,* 502 Pa. at 22, 463 A.2d at 417; and *Conshohocken Federal Savings & Loan Ass'n v. Period & Country Homes, Inc.,* 287 Pa.Super. 520, 528–33, 430 A.2d 1173, 1177–80 (1981). However, all of these cases are construction-loan cases, unlike the instant case. Moreover, we believe that these cases represent a statement of discomfiture with the promulgation of Pennsylvania as an adherent of the "minority doctrine," more than an attempt to greatly broaden the scope of "obligatory advances." Therefore, we answer the first question in the negative.

■ However, we nevertheless conclude that 1st PA. should prevail because we believe that the passage from *Housing Mortgage* quoted above at page 651 *supra,* despite its citation of *Ter–Hoven v. Kerns* and other dated cases supporting the "minority doctrine," in fact intended to and therefore did change the law of the *Ter–Hoven* case to a slight degree and placed Pennsylvania among the constellation of jurisdictions accepting the "majority doctrines." We are particularly impressed with the reference to the significance of the initial mortgage's *"actual* notice or knowledge of the intervening encumbrances"* (emphasis added) in the quoted passage. What could the use of the word "actual" possibly mean in this context except a repudiation of the prior requirement, supported only by cases described as "not recently decided" fifty years ago, 138

A.L.R. at 587, and out of step with contemporary law, that "constructive" notice of the intervening mortgage was sufficient? *But see* 24 P.L.E. 524–26 (1960) (although acknowledging the *Housing Mortgage* decision, the text states that the *Ter–Hoven* rule survives; however, the text seems to be unaware of the tension created by the selection of language of the court in *Housing Mortgage* noted above).

Several other lines of reasoning lead us to this conclusion. Provident's main contention, in support of the perpetuation of the "minority doctrine" as articulated in *Ter–Hoven,* is that 1st PA. could have and should have consulted the public records prior to making further advances and that, by failing to do so, it was proceeding at its peril. However, this reasoning overlooks the fact that Provident could have been, should have been, and probably was aware of 1st PA.'s prior mortgage when it made *its* loan. By assuring itself that the 1st PA. mortgage was satisfied or by the simple device of notifying 1st PA. of its intentions to take an intervening mortgage, Provident could have protected itself. By failing to do so, Provident was proceeding at *its* peril.

Contrary to the reasoning of *Ter–Hoven* is a principle, running from that same era, that the priority of mortgages is generally established by which mortgage is left for recording first. *See In re Mirkin,* 100 B.R. 221, 225 (Bankr.E.D.Pa.1989); *Woods's & Brown's Appeal,* 82 Pa. 116, 118 (1876); and *Brooke's Appeal,* 64 Pa. 127, 129–30 (1870). A hypothetical third party whose sole source of information as the priority of the two mortgages in issue would be the recordings of the parties' respective mortgages would conclude that 1st PA.'s mortgage was first to be recorded and hence was prior to that of Provident.[2] *Cf. In re Morrison,* 69 B.R. 586, 591 (Bankr.E.D.Pa.1987) (future advance clause may be valid even if not recorded).

---

**2.** *But see* the Annotation, *supra,* 138 A.L.R. at 566–67. We take issue with the reasoning of the Annotation in this respect. We believe that granting a priority to the mortgagee taking a *prior* mortgage in future advances is more consistent with the generally controlling doctrine of "first in time, first in right" than allowing the mortgagee making future advances to assert a security interest only as of the time of the advances themselves.

*But cf. In re Shapiro,* 109 B.R. 127, 132–35 (Bankr.E.D.Pa.1990) ("dragnet" clause attempting to "drag in" *past* (as opposed to future) advances held not valid under New Jersey law).

Also supporting this conclusion is the recent line of cases, cited at page 652 *supra,* which have given future advance clauses effect, even in the context of three-party construction loans, by broadening the "obligatory loan" category.

Finally, this conclusion is supported by the enactment of Act No. 1990–126 ("the Act") on October 12, 1990. While the Act does not effect the priority of mortgages which, like those in the instant case, pre-date the enactment of the legislation, *see* Section 2 of the Act, the Act nevertheless spells out the implicit requirement, per the "majority doctrine," that, in order to obtain priority over an outstanding "open-end mortgage," the intervening mortgagor must provide a very specific notice to the prior mortgagee. 42 Pa.C.S. §§ 8143(b), (d). The Act appears to be merely the final step in a march of Pennsylvania law away from the increasingly-isolated minority position which its courts articulated in the 19th century.

### D. CONCLUSION

We therefore conclude that the failure of Provident to establish that it provided 1st PA. with "actual notice" of its intervening mortgage or that 1st PA. had "actual knowledge" of Provident's intervening mortgage is fatal to its claim of priority over 1st PA.'s mortgage under the reasoning of *Housing Finance.* An Order declaring that 1st PA.'s mortgage is prior to Provident's mortgage will therefore be entered.