372 A.2d 854

**TRUSTEES OF C. I. MORTGAGE GROUP, Appellant,**

v.

**STAGG OF HUNTINGTON, INC. (D. C. GOODMAN & SONS, INC.), Appellee.**

Superior Court of Pennsylvania.

Argued March 15, 1976.

Decided April 19, 1977.

James E. Himes, Huntingdon, with him Himes, Himes & Feltham, Huntingdon, for appellant.

William J. Myers, Huntingdon, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

WATKINS, President Judge:

This case comes to us on appeal from an Order of the Court of Common Pleas of Huntingdon County, Civil Court Division, which granted exceptions filed by a subcontractor to a sheriff's Statement of Distribution following a sheriff's sale.

Appellant, Trustees of C. I. Mortgage Group, was the mortgagee of a piece of real estate upon which a shopping center was to be built in Smithfield Township in Huntingdon County. Appellant had obtained a mortgage foreclosure on the above real estate and had purchased the property at the sheriff's sale when its loan became subject to default. Stagg of Huntington, Inc., (Stagg) was the defendant in the mortgage foreclosure action. D. C. Goodman & Sons, Inc., (Goodman) was a subcontractor who had performed work on a portion of the shopping center for which it had not been paid and which formed the basis of its mechanic's lien.

On September 1, 1971 Stagg acquired title to the premises which was the subject of the mortgage foreclosure. On September 24, 1971 a mortgage in favor of appellant was recorded covering the subject property. The mortgage was an advance-money mortgage providing for advancements to be made as the buildings in the shopping center progressed, to the extent of $1,600,000.

On September 24, 1971 a stipulation against mechanic's lien was filed of record in the Prothonotary's Office of Huntingdon County with Stagg of Huntington, Inc., (Stagg) as the owner and Stagg Contracting Company as the contractor. On December 30, 1971 Stagg executed a deed, recorded on March 6, 1972, which conveyed the real estate to Huntingdon Associates. On December 17, 1973 a mechanic's lien was filed by Goodman covering work performed on a

portion of the shopping center from January 2, 1973 to September 20, 1973. The amount of the lien was $36,756.69. After appellant had foreclosed its mortgage on the premises and purchased the premises at the sheriff's sale for the sum of $1,488,000, Goodman filed exceptions to the Schedule of Distribution which had provided appellant with the total proceeds of the sale. After a hearing, the court below sustained Goodman's exceptions to the Schedule of Distribution on April 23, 1975. Appellant then took this appeal claiming that the original Schedule of Distribution was correct.

At the outset it should be emphasized that because of the privilege extended by the legislature in the mechanic's lien law it must be strictly construed. One issue is whether the advance of the last $600,000 by C. I. Mortgage was obligatory under the terms of the mortgage agreement with Stagg. Under the terms of the mortgage agreement the last $600,000 was to be advanced to Stagg upon presentation to the mortgagee of a lease between Stagg and a third party for part of the shopping center. The advance was made by the mortgagee prior to the presentation of any such lease. Therefore there is an issue as to whether the condition precedent to the last advance was met. If not, this would render the last $600,000 nonobligatory.

Additionally there is the fact that on December 30, 1971 Stagg conveyed the real estate which was subject to the mortgage to another party (Huntingdon Associates). This conveyance was made without the written permission of C. I. Mortgage and thus was in direct violation of paragraph 11 of the building loan agreement made between C. I. Mortgage and Stagg. Therefore the last advance made by C. I. Mortgage was also nonobligatory since Stagg had violated the building loan agreement by transferring the real estate in violation of the agreement. Advances made pursuant to an advance-money mortgage take lien precedence over a mechanic's lien if the mechanic's lien is filed subsequent to the time the mortgage is recorded when the mortgagee is obligated to make the advances. If, however, the mortgagee makes advances it is not obligated to make

after notice of a mechanic's lien, the lien of such advances dates only from the time they were made and not from the time of the recording of the original mortgage. It is only when the advance-money mortgagee is contractually obligated to make advances that its lien relates back to the date of the mortgage. *Housing Mortgage Corporation v. Allied Construction, Inc.,* 374 Pa. 312, 97 A.2d 802 (1953). Since the Trustees of C. I. Mortgage Group had notice of Goodman's claim via a letter dated October 29, 1973 by Goodman informing the C. I. Mortgage of its claim and because C. I. Mortgage was not obligated to make the additional advances of $600,000 for the reason set forth above we hold that the subcontractor's mechanic's lien takes precedence over the nonobligatory advance of the last $600,000 from appellant to Stagg. A search of the applicable public records by the subcontractor would have revealed the agreement, including the provision that any sale of the realty involved must have been approved by C. I. Mortgage. It would also have revealed the absence of such a written agreement. Thus the subcontractor was justified in believing that any additional advances would be nonobligatory and therefore subordinate to a mechanic's lien especially where, as in the instant case, the original stipulation against liens did not include a plan for a food market which was added to the stipulation some 8 months after the subcontractor began its work. In *Felin v. Locust Realty Co.,* 232 Pa. 123, 81 A. 158 (1911), the court held that a stipulation against liens bound the subcontractor even though the realty had been sold after the original stipulation was filed because a search of the public records would have revealed the stipulation recorded against the contractor. In our case the search would have revealed the written agreement and the absence of C. I. Mortgage's written permission for the sale. Therefore, the situations are dissimilar.

Affirmed.

PRICE, J., concurs in the result.

SPAETH, J., files a dissenting opinion in which JACOBS and HOFFMAN, JJ., join.

SPAETH, Judge, dissenting:

I would reverse. In my opinion the stipulation against mechanics' liens covered the building that appellee worked on. If I am right, appellee's lien had no validity, no matter when it was filed. It is therefore inappropriate to reach the question of priorities.

–1–

A stipulation against mechanics' liens

should contain such information or reference to such facts as would notify a subcontractor that the building for which he was about to furnish material was that to which the contract related and where the contract contains such a description of the property as is necessary to be set forth where a lien is filed it would be sufficient to put the subcontractor on notice.

*Cribbs v. McDowell,* 48 Pa.Super. 39, 41 (1911).[1]

The "description of the property . . . necessary to be set forth where a lien is filed" is now statutorily defined: "The claim shall state: . . . (8) such description of the improvement and of the property claimed to be subject to the lien as may be reasonably necessary to identify them". The Mechanics' Lien Law, *supra,* § 503, 49 P.S. § 1503(8).

In the present case the stipulation described the property to which it applied as

a shopping center upon a certain lot of ground situate in Smithfield Township, Huntingdon County, Pennsylvania at the corner of Sycamore Lane and relocated channel of Crooked Creek, the same being more particularly described in the Deed of Kevmar Properties, Inc. dated August 31, 1971 and recorded September 1st, 1971 in the Office of the Recorder of Deeds in and for Huntingdon County in Deed Book "98", Page "512".

1. It is immaterial that *Cribbs* refers only to a "contract," whereas here we have a "stipulation." The Mechanics' Lien Law refers to both written contracts and separate written instruments as on an equal footing. Act of August 24, 1963, P.L. 1175, No. 497, art. IV, § 402, 49 P.S. § 1402.

(R. 103a.)

If appellee read this,[2] it could have learned whether the building it was to work on was in fact on the "certain lot" referred to. If we do what appellee could have done, we shall see that it was: for while the Kevmar Properties deed was not submitted in evidence, its description of the lot is recited in Schedule A of the Mortgage, which was submitted (R. 134a), and this description shows that the building appellee was to work on was on the lot.[3] Given these facts, it cannot be maintained that the stipulation did not adequately notify appellee that its work would be governed by the stipulation.

–2–

The majority says that appellee would have been "justified in believing" that it could file a mechanics' lien "especially [because] the original stipulation against liens did not include a plan for a food market which was added to the stipulation some 8 months after the subcontractor began its work." Majority Opinion 247 Pa.Super. at 339–340, 372 A.2d at 856–857. There are three weaknesses in this reasoning.

First, the observation is beside the point. The effectiveness of the stipulation in no way depended on its including a plan that showed a food market. Indeed, the stipulation did not, and did not need to, include any plan at all. As just discussed, the stipulation was effective as to appellee because (1) it sufficiently described the "certain lot" where the "shopping center" was to be built, 49 P.S. § 1503(8); *Cribbs v. McDowell, supra;* and (2) appellee knew, or was charged with knowing, 49 P.S. § 1402, that the building it was going to work on was in that shopping center.

Second, the majority's statement of the facts is incorrect, in two respects. The plan for the food market was not

2. It does not matter whether appellee read it or not. Actual notice is not required when, as here, the stipulation has been properly filed. 49 P.S. § 1402.

3. For a drawing showing the lot and location of the building on it, *see* the architect's plan submitted in evidence at R. 163a.

"added to the stipulation" *late* ("some 8 months after the subcontractor began its work"); it was *never* added, for the stipulation did not, and did not need to, include any plan. If the majority means that the building appellee worked on was not added to the plan for the "shopping center" referred to in the stipulation until eight months after appellee began work, it must be noted that the majority has the dates wrong.[4] The words "Riverside Food Market" appear on a revised plan dated "8/31/72." (R. 164a.) By its own testimony appellee began work on January 2, 1973. (R. 45a.) Thus, the building was added to the plan four months *before* appellee began work.

Third, the majority's statement that the "plan for a food market . . . was added" necessarily implies (or else the majority's conclusion fails on its own premises) that the original plan did not include this building, and that is not so. The stipulation was filed on September 24, 1971. On the architect's plan dated "3/4/71," revised "8/11/71," a "future building" is drawn in dotted lines, with the notation "Sumbmit [*sic*] drawings when financed." (R. 163a.) On the plan revised on "8/31/72" (R. 164a), instead of a "future building," two buildings are drawn in solid lines, one labeled "Riverside Food Market," the other, "Small Stores." Thus, although the building on which appellee worked was not included on the original plan in its final form, the fact that there was to be a building, and its location and general size, were all included.

–3–

The majority finally relies on the fact that the owner, Stagg, sold the entire property to Huntingdon Associates before construction of the food market began. In *Felin v. Locust Realty Co.,* 232 Pa. 123, 81 A. 158 (1911), subcontractors contended that such a sale deprived them of notice of a stipulation against liens, in that if they had searched the mechanics' liens docket they would have found no contract

4. The lower court and appellee made the same mistake. Lower Court Slip Opinion at 1; Appellee's Brief at 8.

indexed under the name of the second owner. (In *Felin,* as here, the sale took place before the subcontractors and the general contractor formed their contract.) The Supreme Court held the sale immaterial:

> [The] subcontractors[ ] made their contract with . . . the original contractor, and were bound to search against it. If they had done so, they would have found the contract for the erection of the building upon which they were asked to estimate; and, further, that it contained the stipulation that no liens should be filed against the property.

*Id.* 232 Pa. at 126, 81 A. at 159.

Here, appellee made its contract with Stagg Contracting Corporation and was bound to search against it. If it had done so, it would have found the stipulation against mechanics' liens.

The majority undertakes to avoid *Felin* on the ground that here "the search would have revealed the written agreement [between C. I. Mortgage and Stagg] and the absence of C. I. Mortgage's written permission for the sale." Majority Opinion 247 Pa.Super. at 340, 372 A.2d at 857. Thus the majority suggests that a persistent subcontractor may go behind the notice held good in *Felin,* and by investigating an underlying mortgage agreement and possible breaches of it, create for himself the possibility of filing a valid mechanics' lien despite the effectiveness of the stipulation against liens. This suggestion confuses the question of the effectiveness of the stipulation with the question of priorities. It is like arguing about where to sit when you have no ticket to the theatre. If the stipulation is effective—as here it was—the question of priorities is never reached. One can only argue about priorities if one has a lien; and one cannot have a lien if the stipulation precludes it.

The order of the lower court should be reversed and appellee's claim disallowed.

JACOBS and HOFFMAN, JJ., join in this opinion.