444 A.2d 755

**CENTRAL PENNSYLVANIA SAVINGS ASSOCIATION,
Appellant,**

**v.**

**CARPENTERS OF PENNSYLVANIA, INC.**

**CENTRAL PENNSYLVANIA SAVINGS ASSOCIATION**

**v.**

**CARPENTERS OF PENNSYLVANIA, INC.**

**Appeal of COMMONWEALTH NATIONAL BANK.**

Superior Court of Pennsylvania.

Argued March 5, 1980.

Filed April 16, 1982.

Petition for Allowance of Appeal Granted July 19, 1982.

Patrick T. Ryan and Kathleen Lynch, Philadelphia, for Central Pennsylvania, appellant (at No. 115) and appellee (at No. 125).

Robert C. Spitzer, Harrisburg, for Commonwealth Nat. Bank, appellant (at No. 125) and for participating party (at No. 115).

Before CERCONE, P. J., and WATKINS and MONT-
GOMERY, JJ.

WATKINS, Judge:

This case comes to us on appeal from the Court of Com-
mon Pleas of Dauphin County, and involves a dispute be-
tween two banking institutions as to the priority of their
respective liens against real estate and the distribution of
the proceeds of a sheriff's sale.

On November 30, 1973, Central Pennsylvania Savings
Association (CPSA) agreed to lend the sum of $1,289,500.00
to Carpenters of Pennsylvania, Inc. (Carpenters) in order to
enable it to construct fifty (50) low-income residential units
on a tract of land in the Borough of Steelton, Dauphin
County. At closing the loan amount was reduced to $1,221,-
500.00 and it was secured by a construction mortgage re-
corded against the tract of land on December 3, 1973.
CPSA subsequently advanced a total of $1,211,103.87 to
Carpenters pursuant to the construction mortgage.

The Commonwealth National Bank (CNB) also made a
loan to Carpenters for the purpose of constructing twenty-
eight (28) residential dwellings on a separate, but neighbor-
ing, tract of land. When Carpenters defaulted on the loan,
CNB entered judgment against it in the amount of $778,-
411.13 on November 6, 1974.

On January 6, 1976 CPSA confessed judgment against
Carpenters in the amount of $817,010.19 pursuant to the
mortgage and note dated November 30, 1973. CPSA then
issued a writ of execution and directed the Sheriff of
Dauphin County to sell the real estate on which the fifty
(50) residential units were to be constructed at Sheriff's
Sale. At the Sheriff's Sale, CPSA bid $812,000. However,
CNB initiated a deficiency judgment proceeding prior to the
sale and the court ruled that the CNB judgment should be
credited in the amount of $178,656.10. After the Sheriff's
Sale the Sheriff's Schedule of Distribution was prepared
which indicated that the proceeds of the sale would be
distributed entirely to CPSA based upon its mortgage which

was recorded on December 3, 1973 and which, therefore, predated the CNB judgment which was dated November 6, 1974. CNB filed exceptions to the Sheriff's distribution schedule asserting that its judgment of $178,656.10 had priority over the CPSA lien to the extent of the sum of $161,312.33 because CPSA's lien had been in default and its advances after November 6, 1974 under the construction mortgage were voluntary. CNB's exceptions were then subject to lengthy hearings before the court below. On January 25, 1979 the court below ruled in favor of CNB and sustained its exceptions to the Sheriff's Schedule of Distribution. The court then ordered the Sheriff to pay CNB the sum of $149,220.23 with interest out of the proceeds of the Sheriff's Sale. CPSA then appealed the court's ruling. CNB then filed a cross appeal arguing that the court below erred in crediting CPSA with $11,000 of interest advances thereby reducing the amount ultimately due it from the Sheriff's Sale by that amount. CNB also argues that CPSA's appeal should be quashed as untimely because, instead of taking an appeal to this court within thirty (30) days of the January 25, 1979 ruling, CPSA filed "exceptions" to said ruling which were dismissed on May 29, 1979. CPSA then appealed from the "Final Order" of the court below dated May 29, 1979.

With respect to CNB's assertion to the effect that CPSA's appeal was untimely and should, therefore, be dismissed the court below stated as follows:

"The Commonwealth National Bank did challenge the procedure which was followed in the instant situation. Commonwealth National Bank contended the verdict rendered January 25, 1979 constituted a "Final Order" as to which Central Pennsylvania Savings Association can seek relief only by an appeal. It bases its position on Pennsylvania Rule of Civil Procedure 3136 which governs the disposition of a sheriff's schedule of distribution. The Rule provides in subsection (g) that the proceeds of sale may be paid into Court to await distribution or the Court may order the sheriff to invest the fund pending final

disposition of the exceptions or "an appeal therefrom." This argument by the Bank has not been accepted. Rule 1038 of the Rules of Civil Procedure, which is applicable to actions at law tried without a jury, clearly provides the authority to file exceptions to a Court's decision following a trial without a jury. In addition, Rule 9.13 of the Rules for the Court of Common Pleas for Dauphin County recognizes that in actions at law or in equity, exceptions may be taken. Although Pennsylvania Rule of Civil Procedure 31–36(g) implies a right to appeal from the final disposition of the exceptions to the sheriff's schedule of distribution, that right lies only from a *final order* sustaining or dismissing the exceptions to the sheriff's schedule and unless authorized by statute, an appeal from an interlocutory order is premature and must be quashed. Since Central Pennsylvania Savings Association filed its exceptions timely after the Court's decision, a final judgment could not be entered prior to argument and disposition of the exceptions. Thus, it is concluded that the exceptions of Central Pennsylvania Savings Association to the Court's "Memorandum and Verdict" including findings of fact and conclusions of law were properly before the Court for argument and disposition by the Court en banc. See also 2 Goodrich Amram 2d 1038(b):1 and 1038(e):2."

We agree with the analysis of the court below with respect to this issue and will not quash the appeal.

The ultimate issue in the instant case is whether the CNB judgment takes priority over advances made by CPSA the mortgagee, under its construction money mortgage.

The court below found as a fact that:

"6. CPSA acknowledges that as of May, 1975, it was aware of the judgment of CNB and made advances thereafter of $20,393.42; but a meeting between officers of the institutions disclosed actual knowledge by CPSA in February of 1975."

The court also found the CPSA retained control over a "loan in process account" into which the CPSA loan money was

deposited to be "drawn against" as construction proceeded in accordance with the terms of the advance money mortgage contract "and that Carpenters paid interest only on the loan amounts after draws were made for payments to contractors and other vendors from that account". The court further found that CPSA was required to make advances to Carpenters "only as per the terms set forth in the loan documentation which included the advance money mortgage contract" and that it advanced $167,213.33 to Carpenters subsequent to the date of CNB's judgment (November 6, 1974).

■ It has been held that: "A creditor making non-obligatory future advances stands in the same position as one who is dealing with the debtor for the first time and, therefore, his lack of knowledge of a prior judgment does not give him priority over proceeds of a Sheriff's sale." *Ter-Hoven v. Kerns*, 2 Pa. 96 (1845). It is only when the advance money mortgagee is contractually obligated to make the advances that the lien relates back to the date of the mortgage. *Housing Mortgage Corporation v. Allied Construction Co.*, 374 Pa. 312, 97 A.2d 802 (1953).

■ Thus, if CPSA was obligated to make the advances, they take priority from the date of CPSA's mortgage and are not subject to CNB's intervening judgment. The court below concluded that some of CPSA's advances were non-obligatory because of Carpenters' inability to pay interest, taxes, and insurance premiums when due and because of Carpenter's failure to produce a viable marketing program pursuant to the loan contract. However, this reasoning ignores the fact that all the loan money was immediately transferred by CPSA into Carpenters' escrow account at the bank at the time of the closing on the loan (November 30, 1973). Although Carpenters' paid no interest on money until it was actually advanced in the course of construction and received no interest on the escrow account, the fact remains that the full $1,221,500 was transferred to the escrow account by CPSA a year prior to the time that CNB entered its judgment. Advances were indeed made from this account after November 6, 1974 (the date of CNB's judg-

ment) but all the money had been advanced to that account before that date. Thus, we find that the transfer of the money into the escrow account was more than a mere "bookkeeping device" as held by the court below. The transfer of said funds created an obligation on CPSA's part to commit those funds to Carpenters as per the contractual agreement and Carpenters did not default on its obligation until July 1, 1975 when interest payments became two months in arrears. Insofar as Carpenter's lack of a marketing program is concerned it must be noted that lack of such a program was not an event of default under any of the loan documents. Likewise we agree with CPSA's argument to the effect that the lack of an inadequate marketing plan obviously increase as the project approaches completion. Thus, we do not accept CNB's position to the effect that a default existed on November 6, 1974. As pointed out by CPSA such a holding would in effect mandate that a mortgagee should be legally obligated to foreclose on a mortgagor at the first sign of financial weakness. Important policy considerations militate against such a holding. Lendors should not be penalized for taking a co-operative approach to the financial difficulties of their debtors. Nor should they be discouraged from approving construction money mortgages which would indeed be the case if the decision and reasoning of the court below were correct. In *Trustees of C.I. Mortgage v. Stagg of Huntington, Inc.*, 247 Pa.Superior Ct. 336, 372 A.2d 854 (1977), reversed on other grounds, 484 Pa. 464, 399 A.2d 386 (1979), we set forth two reasons for according preference over a prior construction mortgage to an intervening lien: actual notice to the senior lien (The Mortgagee) and the voluntary nature of the advances. In the instant case CNB did not give actual notice of its judgment of CPSA on November 6, 1974. The earliest date upon which it gave notice of the lien to CPSA was in February of 1975. Yet CNB knew of CPSA's loan to Carpenters. Under these circumstances it is logical to place the greater burden upon CNB, the junior lienholder, since CPSA's mortgage was recorded almost a year prior to CNB's

judgment and CNB, therefore, had notice of CPSA's senior lien.

We hold that the court below erred when it found that CPSA's advances were non-obligatory. We also hold that CNB, the junior lienholder, had the duty to provide actual notice to CPSA, the senior lienholder, of its junior lien before said lien could take priority of CPSA's mortgage.[1]

Thus, we reverse that portion of the lower court's order directing the Sheriff to pay CNB the sum of $149,220.32 and remand the matter to the court below for proceedings consistent with this opinion.

---

1. To the extent that this reasoning is inconsistent with *Ter-Hoven v. Kerns*, supra, we believe that the instant holding reflects the more desirable and modern view with regard to the responsibilities of various lienholders toward each other.