**POULOS INVESTMENT, INC.,**
**Appellant (Plaintiff),**

v.

**MOUNTAINWEST SAVINGS AND**
**LOAN ASSOCIATION, Appellee**
**(Defendant).**

**No. 83–215.**

Supreme Court of Wyoming.

May 14, 1984.

Rehearing Denied May 29, 1984.

Bernard Q. Phelan, Cheyenne, for appellant.

Douglas G. Madison and John E. Masters of Dray, Madison & Thomson, P.C., Cheyenne, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

BROWN, Justice.

The county court determined that a mortgage securing a loan represented by a promissory note was security for the principal amount of the note and also the interest that accrued on the principal. The district court sitting as an intermediate court of appeal affirmed the county court.

Appellant identifies the issues as:

"1. Were the findings of fact by the lower courts supported by the evidence, or were they contrary to the clear weight of the evidence and clearly erroneous?

"a) Did the procedure of the defendant-appellee of charging interest 'payable monthly' to the principal amount of the loan thereby '... reducing the funds available for future draws against the construction loan ...' make such interest payments part of the loan proceeds?

"b) Did cash advances by the defendant-appellee exceed $72,000.00, the original amount of the loan?

"2. Does a subordinate mortgage lien have priority over a superior mortgage lien when, after notice of the subordinate lien, optional advances made by the superior mortgage lien holder on a construction loan exceed the principal amount of the superior lien?"

We will affirm.

On December 12, 1979, Al Rossi Building, Inc. (hereinafter Rossi) gave a promissory note to appellee MountainWest Savings and Loan Association (hereinafter MountainWest) in the principal amount of $72,000. The note provided for monthly interest payments.[1] The promissory note

---

1. Several extension agreements were entered into by Rossi and MountainWest, by which the due date was extended to a later date.

was secured by a mortgage on real property. The loan was to finance construction, and according to the usual construction loan scheme, MountainWest was to distribute funds to Rossi as construction progressed.

As construction proceeded, MountainWest released funds to pay construction costs. On January 17, 1980, a mortgage from Rossi to Poulos Investment Company (hereinafter Poulos) was recorded. It was understood by all parties that this latter mortgage was subordinate to the MountainWest mortgage. Both parties to this action had actual and constructive notice of both the MountainWest mortgage and the Poulos mortgage.

MountainWest in its bookkeeping showed a running account of the amount Rossi owed MountainWest. In its ledger sheet MountainWest showed check numbers representing amounts paid for excavation, plumbing and many other similar items. These amounts were extended and added to previous balances to show the total amount Rossi owed MountainWest. No interest was paid. Interest that accrued each month was computed and added to the running account to show Rossi's indebtedness at any given time. On or about June 12, 1982, the amounts MountainWest paid for construction plus accrued interest exceeded $72,000, the principal amount of the December 12, 1979, promissory note and mortgage.

Rossi defaulted on both the MountainWest loan and the Poulos loan. MountainWest foreclosed its mortgage. At the foreclosure sale the Rossi property sold for $89,860.80. This was the amount MountainWest's ledger sheet showed was due on its loan to Rossi. The ledger sheet showed $70,909.55 construction costs and $18,951.25 interest charges. None of the proceeds from the foreclosure sale were paid to Poulos.

Poulos filed this action against MountainWest claiming that its lien was superior to the MountainWest lien with respect to amounts paid by MountainWest after $72,-000.00 had been paid out or charged as interest.

The case was tried before the Honorable Franklin Mockler, County Judge for Laramie County, who rendered a judgment in favor of MountainWest. This judgment was appealed to the District Court of Laramie County where the Honorable Joseph F. Maier, sitting as an intermediate appellate court, affirmed the county court.

Appellant Poulos contends that all amounts paid and accruing interest after the principal amount of the $72,000 loan had been reached were optional advances made in excess of the construction loan and were therefore subordinate to its intervening mortgage. Poulos contends that on June 12, 1981, the principal of the construction loan had been exhausted and further payments by MountainWest, plus accruing interest, were optional advances and these amounts were subordinate to its lien.

The question we have to solve is whether the priority of a first mortgage includes interest or does the priority apply to just the principal if an intervening second mortgage is involved.

Poulos cites authority for a rule that "optional advances made after notice of subsequent liens do not have priority over subsequent liens." American Law of Property, Section 16.73 (A.J. Casner, Ed.1952); *Elmendorf-Anthony Co. v. Dunn*, 10 Wash.2d 29, 116 P.2d 253 (1941); *Trustees of C.I. Mortgage Group v. Stagg of Huntington, Inc., (D.C. Goodman & Sons, Inc.)*, 247 Pa.Super. 336, 372 A.2d 854 (1977); and other cases.

■ We do not disagree with this authority; however, that rule of law applies to optional advances made and does not apply to interest that accrues on the principal amount of a loan.

Poulos contends that MountainWest's accounting method supports its theory that optional advances were made. Poulos reasons that when MountainWest added the unpaid monthly interest to Rossi's construction loan account, it in fact became

principal; and therefore when the accumulated debt exceeded $72,000, MountainWest had exhausted its authorized principal advances. We disagree. The fact that MountainWest's accounting showed that unpaid interest was added to Rossi's debt account does not make the interest part of the principal.

Some of the language used by MountainWest's loan officer during his examination at trial is confusing, contradictory and ambiguous, and if considered in isolation, tends to support Poulos' theory. Some of his testimony on the surface seems to say that optional advances were made when the accrued interest was extended on the ledger sheet and reflect the total debt due. We cannot decide this case solely on accounting methods used by MountainWest or how its loan officer characterized the accrued interest. We base our determination here on what the Rossi-MountainWest mortgage provided.

■ The mortgage from Rossi to MountainWest provides in part:

"Whereas, Borrower is indebted to Lender in the principal sum of Seventy-Two Thousand and no/100 Dollars, which indebtedness is evidenced by Borrower's note dated December 12, 1979 (herein 'Note'), providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on December 12, 1980.

"To Secure to Lender (a) the repayment of the *indebtedness evidenced by the Note, with interest thereon* the payment of all other sums, *with interest thereon,* advanced in accordance herewith to protect the security of this Mortgage, and the performance of the covenants and agreements of Borrower herein contained, and (b) the repayment of any future advances, *with interest thereon,* made to Borrower by Lender pursuant to paragraph 21 hereof (herein 'Future Advances'), Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in the County of Laramie, State of Wyoming. * * *

\* \* \* \* \* \*

"21. Future Advances. Upon request of Borrower, Lender, at Lender's option prior to release of this Mortgage, may make Future Advances to Borrower. Such Future advances, with interest thereon, shall be secured by this Mortgage when evidenced by promissory notes stating that said notes are secured hereby." (Emphasis added.)

It is clear that the mortgage itself specifically provides that Rossi's real property was pledged to secure both principal and interest. The way MountainWest's loan officer characterized the ledger entries is not controlling. Authority cited by Poulos pertains to situations where optional advances were made by a lender similar to the advances provided for in paragraph 21 above of the Rossi-MountainWest mortgage. It may very well be that if MountainWest paid sums according to the provisions in paragraph 21 of the mortgage (future advances), these sums, together with interest thereon, would be secondary in priority to Poulos' second mortgage. However, that is not the case here; MountainWest never made optional advances to Rossi.

We hold that under the specific terms of the Rossi-MountainWest mortgage the security covered both principal and interest and that the construction loan was never exhausted.

Poulos contends that the determination of this case by the county court and the district court was not supported by the evidence or was contrary to the clear weight of the evidence. This is not really a sufficiency of the evidence case; rather, it is a matter of determining the legal consequences of the Rossi-MountainWest mortgage. The evidence we consider to decide this case is not disputed. The only dispute

involves the priorities that flow from the mortgage.

It is uncontroverted that the Rossi-MountainWest mortgage was a first mortgage; that $70,909.55 was paid by MountainWest for normal construction costs; that $18,951.25 interest accrued on the amounts advanced by MountainWest for construction; that the total amount Rossi owed MountainWest was $89,860.80. The only problem the parties have is a determination of priorities between the two mortgages. We have discussed that matter in the first portion of this opinion.

Affirmed.