

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-6-2007

# USA v. Jacono

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2155

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Jacono" (2007). *2007 Decisions.* Paper 617.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/617

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-2155

———————

UNITED STATES OF AMERICA

v.

WILLIAM JACONO, Deceased, and any
Heirs, Executors or Assigns of said
William Jacono

TRUSTEE ROBERT MILLER
(Intervenor in D.C.)

Robert Miller, Trustee,
Appellant

———————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 04-cv-03478)
District Judge:  Honorable John R. Padova

———————

Submitted Under Third Circuit LAR 34.1(a)
July 12, 2007

Before:  RENDELL, AMBRO and NYGAARD, <u>Circuit</u> <u>Judges</u>.

(Filed:   August 6, 2007)

———————

OPINION OF THE COURT

———————

RENDELL, *Circuit Judge*.

Robert Miller appeals the District Court's order granting the United States' motion to amend its complaint and granting its motion for summary judgment in this mortgage foreclosure action initiated by the United States against the estate of William Jacono. We will affirm.

I.

On June 11, 1993, William Jacono ("Jacono") took out a Home Equity Conversion Mortgage ("HECM") from Hart Mortgage Company ("Hart") on his home located at 4178 Oliver Avenue in Boothwyn, Pennsylvania, in order to secure a home equity line of credit. The property was also mortgaged in favor of the United States Department of Housing and Urban Development ("HUD"), which insured the Hart mortgage. When the Hart mortgage was later assigned to HUD on February 4, 2000, the HUD mortgage was thereafter released and marked satisfied, although the primary Hart mortgage remained unsatisfied. Both the Hart mortgage and the HUD mortgage were recorded in the real estate records of Delaware County, Pennsylvania, on July 1, 1993.

Under the terms of the loan agreement between Hart and Jacono, Hart agreed to advance Jacono up to 150% of the appraised value of his home. Jacono in fact received advances totaling $79,489.03 during his lifetime. In addition, interest, service fees, and mortgage insurance premiums accrued and were added to the principal. The outstanding balance on the home equity loan as of March 3, 2006 was $189,754.54. Under the agreement, the lender could require full and immediate payment of the loan balance upon Jacono's death, but could only recover the debt through the sale of the mortgaged

2

property. The lender could not obtain a deficiency judgment against Jacono. Jacono died on October 11, 2003, and the United States, as the holder of the Hart mortgage, instituted this foreclosure action against Jacono's estate in the United States District Court for the Eastern District of Pennsylvania.

James Jacono ("James"), the son and only known heir of William Jacono, and Robert Miller, the current Trustee of the Irrevocable Living Trust of William Jacono ("the Trust"), argued before the District Court that Jacono conveyed the property at issue to the Trust on August 11, 1992, prior to the date that he mortgaged the property in favor of Hart. However, the deed conveying the property from Jacono to the Trust was not recorded until 2003, after the Hart mortgage had already been recorded.

The United States moved for summary judgment in the District Court and also requested permission to amend its complaint to attach the correct mortgage note. The Court granted the motions and entered a judgment in favor of the United States.[1] Miller appealed.

II.

---

[1] There is some dispute as to whether the District Court's judgment in this case should be understood to be a money judgment against defendants, or as a judgment of foreclosure which states the amount adjudged due under the mortgage. We observe that the mortgage documents executed by Jacono do not allow the mortgagee to seek a deficiency judgment against the mortgagor, nor did the United States seek a money judgment against defendants in its complaint. However, because this issue was raised for the first time in Miller's reply brief, we will not address it in this appeal. *See United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.").

We exercise plenary review over an order granting a motion for summary judgment and apply the same standard as the District Court. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000).

Under Pennsylvania's recording statute, an unrecorded deed is void as to any subsequent "bona fide purchaser or mortgagee." 21 PA. CONS. STAT. § 351.[2] A "bona fide purchaser" is "one who pays valuable consideration, has no notice of outstanding rights of others, and acts in good faith." *Carnegie Natural Gas Co. v. Braddock*, 597 A.2d 285, 288 (Pa. Commw. Ct. 1991). "The burden of proving notice is upon the party asserting unrecorded rights in the property." *Id.* Miller argues that there is a genuine issue of material fact concerning whether Hart had notice that Jacono had conveyed the

---

2The statute provides, in relevant part: "All deeds . . . shall be recorded in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate. Every such deed . . . which shall not be acknowledged or proved and recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee . . . without actual or constructive notice unless such deed . . . shall be recorded, as aforesaid, before the recording of the deed . . . under which such subsequent purchaser, mortgagee, or judgment creditor shall claim."

4

property to the Trust prior to 1993.

First, Miller contends that Jacono did not receive the face-to-face counseling "required" by the HUD regulations governing Home Equity Conversion Mortgages ("HECM") and that such counseling would have likely brought to light the fact that Jacono had deeded the property to the Trust.[3] Miller argues that a factfinder could conclude that the mortgagee had constructive notice of the prior conveyance of the property to the Trust based on evidence that the mortgagee failed to ensure that the mortgagor received the required counseling and that the mortgagee would have learned about the conveyance if the required counseling had occurred. However, even if constructive notice could be proved in this way, there is no evidence that Jacono did not receive the counseling required under the HUD regulations. The HUD "guidelines" that Miller references require only that "[h]ousing counselors should make every effort to provide HECM counseling on a face-to-face basis. . . . Telephone counseling should be an alternative only where face-to-face counseling is unfeasible." App. 125. Here, Jacono contacted the Philadelphia Council for Community Advancement ("PCCA") for mortgage counseling. At the time that Jacono sought counseling, there were no agencies in Delaware County that provided counseling of this kind. Henry Cruz, who was the Director of Housing Counseling at PCCA, testified that the agency's procedure was

_____

[3]The fact that Jacono signed the counseling certificate on 2/21/93 and the Director of Housing Counseling signed it on 2/19/93 suggests that the required counseling was done over the phone.

5

"always to ask if [clients] could come in for a face-to-face, yes. That was always the first request." App. 119. There is no evidence from which a factfinder could conclude that PCCA failed to try to get Jacono to come in for face-to-face counseling prior to counseling him over the phone or otherwise failed to comply with the HUD regulations governing HECM.

Miller further contends that there is a genuine factual dispute as to whether Jacono told the Hart employee who assisted him in filling out the mortgage loan application that the property was owned by the Trust. However, the evidence proffered by Miller is insufficient to allow a factfinder to make this finding. Miller points out that the mortgage application says "Establish Trust" in the box entitled "Purpose of Refinance." App. 235. In addition, there is some sketchy notation next to the property address on page 3 of the application that Miller argues reads "ET." App. 237. Finally, Miller notes that Jacono requested that the proceeds of the loan be deposited into a Fidelity account which, according to the bank statement submitted with Jacono's mortgage application, is owned by the Trust rather than Jacono. We agree with the District Court that a factfinder could not reasonably find, based on the proffered evidence, that Jacono told Hart that the property was owned by the Trust. If anything, the notation and mention of a trust in the mortgage application indicated that Jacono intended to use the proceeds of the loan to establish a trust. Jacono's request that the loan proceeds be deposited into an account owned by the Trust is consistent with this intention.

Finally, Miller argues that there is a genuine factual dispute as to whether James

6

told the mortgagee, after the closing but prior to Jacono's cashing the first check for the loan proceeds, that the property was owned by the Trust. He contends that the mortgagee is not a "bona fide mortgagee" if it has actual or constructive knowledge of the prior conveyance before the time that the mortgage is recorded *and the mortgagee has advanced money to the mortgagor.* Appellant Br. 37. However, the authority that Miller relies upon for this proposition, *Housing Mortgage Corp. v. Allied Construction Inc.*, 97 A.2d 802, 805-06 (Pa. 1953), concerns the extent to which the lien of a mortgage to secure future advances has priority over the lien of a purchase money mortgage, not when a mortgagee is a "bona fide mortgagee" within the meaning of 21 PA. CONS. STAT. § 351. *Housing Mortgage Corp.* explains that an "advance made pursuant to a mortgage to secure future advances which the mortgagee was not *obligated* to make, is subordinate in lien to an encumbrance intervening between the giving of the mortgage and the making of the advance, if the advance was made with actual notice or knowledge of the intervening encumbrance." *Hous. Mortg. Corp.*, 97 A.2d at 805-06. Furthermore, 42 PA. CONS. STAT. § 8143, which concerns mortgages to secure future advances or "open-ended mortgages," such as the mortgage at issue in this case, supersedes the decision in *Housing Mortgage Corp.* to the extent that it requires the holder of the intervening lien or encumbrance to provide written notice of its claim to the property to the holder of the open-ended mortgage in order for the lien of the holder of the intervening mortgage to be given priority. 42 PA. CONS. STAT. § 8143(b). There is no dispute that James did not provide any such written notice in this case.

7

Miller also appeals the District Court's order granting the United States' motion to amend its complaint to attach the correct mortgage note to the Complaint. The Complaint clearly refers to the first mortgage note between Hart and Jacono as "Exhibit 2," the mortgage note at issue in the action. However, the United States attached the note for the second mortgage between HUD and Jacono to the Complaint as "Exhibit 2." *See* App. 27 ("Mortgagor had on June 11, 1993 executed a promissory note memorializing a loan pursuant to the 'Home Equity Conversion Mortgage Insurance Program' from the Hart Mortgage Corporation . . . (hereinafter Lender), allowing Mortgagor to draw advances based upon the equity in his residential property located at 4178 Oliver Avenue, Boothwyn, Pennsylvania 19061. . . . Mortgagor also executed a mortgage . . . on June 11, 1993, granting Lender a lien upon the subject residential property. The mortgage was recorded in the real estate records of Delaware County, Pennsylvania on July 1, 1993 at Volume 1113 Page 0933. See Government's Exhibit 2."). The District Court granted the United States' motion for leave to attach the correct mortgage note to the complaint as Exhibit 2. We review the District Court's order granting the motion to amend for abuse of discretion, *Garvin v. City of Philadelphia*, 354 F.3d 215, 219 (3d Cir. 2003), and find no error in the District Court's order allowing the United States to amend the complaint to attach the correct mortgage note.

## III.

Accordingly, for the reasons set forth, we will affirm the grant of summary judgment in favor of the United States and affirm the District Court's order granting the

8

United States' request to amend its complaint.